REUBEN SHREVE v. JOSEPH VOORHEES et al.

Every proprietor of lands on the banks of a river, has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run, without diminution or alteration.

He has no right to use the water to the prejudice of other proprietors above or below him. He may use it while it runs over his land, but cannot unreasonably detain it, or give it another direction.

An exclusive enjoyment of water or of light, or of any other easement, in any particular way, for twenty years, without interruption, becomes an adverse enjoyment sufficient to raise a presumption of title as against a right in any other person, which might have been, but was not asserted.

A trivial or unimportant interference, such an one as does not sensibly and plainly interrupt the complainant's enjoyment, will not call for or warrant the restraining power of a court of equity.

As against a riparian owner seeking to erect an improvement on his own land, the complainant ought to show that his superior rights have been or will be, not probably, but really and sensibly affected.

If the complainant is secured in the enjoyment of the use of the stream as he has heretofore had it, without any sensible and material alteration so as to occasion an actual injury, it is all he can require.

BILL for injunction, to restrain the obstruction of a watercourse, to compel the removal of obstructions already erected, and to account for damages done by such erecting obstructions, filed October 2d, 1833. An answer was filed by all the defendants. The material facts contained in the bill and answer are fully stated in the opinion of the chancellor.

The cause was heard upon motion to dissolve the injunction upon the answer of the defendants.

*Wall,* for defendants, in support of the motion.

*Randolph* and *Williamson,* contra.

Cases cited by defendants' counsel. *Angel on Water Courses,* 2, 5, 27, 28, 29, 31, 36, 37, 39; 3 *Kent's Com.* 439, 353.

4

[Shreve v. Voorhees et al.]

Cases cited by complainant's counsel. 2 *Blacks.* 403 ; 17 *Mass.* 289 ; 10 *Serg. and R.* 69 ; 3 *Hals.* 139 ; 5 *Hals.* 74 ; 4 *Ran.* 58 ; 1 *Sim. and Stuart,* 20 ; 3 *Kent's Com.* 353, 355, 358 ; 17 *Johns. R.* 306 ; 15 *Johns. R.* 217 ; 2 *John. Chan. R.* 164 ; 1 *Mad.* 155 ; *Eden on Inj.* 157 ; 3 *John. Chan. R.* 282 ; 1 *Bro. C. C.* 588 : 1 *Ves. sen.* 140 ; 5 *John. Chan. R.* 101 ; 10 *Vesey,* 192 ; 1 *Chan. Cas.* 574 ; 7 *Vesey,* 308 ; 17 *Vesey,* 128 ; 1 *Cox,* 102 ; 6 *John. Chan. R.* 19 ; 2 *Ibid,* 167 ; 3 *Ibid,* 287 ; 1 *Wils.* 174 ; 6 *Cranch,* 51 ; 9 *Cranch,* 160.

THE CHANCELLOR. The complainant's bill is, in substance, as follows :—That he now owns, and since the year 1804 has owned and occupied, a valuable mill-seat at Tinton falls, in Monmouth county, on which is erected a valuable grist and saw mill. The mills are on a stream of water called Falls river, and were purchased, with the privileges and appertenances, by the complainant, in 1804, of Barnes B. Smock, who had occupied them for many years before. That these mills are further up the stream than any other mill, and that he, and those under whom he claims, have for more than fifty years exercised and enjoyed the exclusive use and ownership of the said stream and its tributaries, without having their rights disturbed or questioned, and were the first occupants. That in the year 1773, Daniel Hendrickson, senior, owned and occupied the said mills, and in order the more effectually to secure to himself the exclusive and peaceable enjoyment of his privileges, obtained of one Lewis Pearce Ashfield, the then owner of the beds of the said Falls river and tributary streams thereof for some distance above the said mills, a grant or quit-claim in writing of all his right of and in the said several streams of water. That afterwards, Daniel Hendrickson conveyed the said mills and mill-seat, waters and water-courses, and all his right and title to the same, to Daniel Hendrickson, junior, and John Holmes, who conveyed them to the said Barnes B. Smock, from whom the complainant purchased.

The complainant then charges, that the defendants have threatened and attempted to disturb him in his rights and privi-

[Shreve v. Voorhees et al.]

leges, by damming up the said stream above his mills, and erecting mills thereon, to his great damage and irreparable injury. That they have, without the consent of the complainant, commenced operations to erect their said mills and construct a dam; that they have commenced digging, and draining and damming the water of the complainant, about six hundred yards above his mill, and have already obstructed the stream and diverted it from its natural course, by sinking in timber and other materials, and thus infringed his right, and damaged and greatly endangered the safety and enjoyment of the said property.

The complainant further alleges, that if the defendants are permitted to go on and erect a mill so near to his, and on the same stream, and to be supplied with water from the same source; that by damming up and obstructing the said water-course and withholding the water, and then letting it out at unreasonable times and in undue quantities, as they necessarily must, to keep their mill in operation, according to the nature and usual course of milling business, his right and property will be greatly impaired, if not entirely ruined.

The bill prays, that the defendants may be decreed to remove the obstructions already placed in the stream, and make restitution for the injury sustained thereby; and that they may be injoined from erecting their said contemplated mill on the said river or any of its tributary streams above his mill, and from using the water, or any part of it, for milling purposes.

On filing this bill an injunction was issued.

The defendants, in their answer, admit that the complainant occupies, and for a number of years past has occupied, a millseat, with a grist and saw mill, at Tinton falls; but do not admit his title, and leave him to prove it as he may be advised. They believe he purchased of Barnes B. Smock, whatever interest he possesses in them. They admit the complainant's mills are higher up the stream than any other mill; but deny that he, and those under whom he claims, have for more than fifty years, or for any period of time, exercised, possessed and enjoyed the exclusive use and ownership of the said Falls river, with the said

tributary streams, for milling purposes. They deny, also, that he and those under whom he claims, have for thirty or fifty years, or for any other time, occupied and enjoyed the same as the first occupant, further than this, that they have enjoyed the use of the water, as it flowed in its natural channel, for milling puzposes, within the limits of their mill-seat, including the flowage appertenant thereto, but no further; and they expressly deny that the complainant has any right, at law or in equity, to the stream or its tributaries, or to the land under the water of the streams, further up the stream than he actually uses or occupies at his millseat. And they allege, on the contrary, that Joseph Voorhees, one of the defendants, and those under whom he claims, have been in the peaceable possession, for fifty-four years last past, of the land on the east side of said Falls river, including the said river to the *filum aquæ*, next immediately above the flowage of the said complainant, as tenant in fee, claiming adversely to all others; and that the other two defendants, Joseph H. Van Mater and Holmes Van Mater, and those under whom they claim, have been in the peaceable possession of the lands on the west side of the stream, including the said stream to the *filum aquæ*, next immediately above the flowage of the complainant, as tenants in fee, for at least forty-one years; and that the spot where they calculated to place their mill is within these boundaries. That while the complainant's mill was occupied by Daniel Hendrickson, senior, there was a saw-mill in operation upon one of the tributary streams, adverse to the pretended claims of the complainant.

They state, that they have heard that the complainant set up a claim or title to the bed of the river and its tributaries, from one Lewis Pearce Ashfield, but what this claim or right is they leave to be proved. They deny, however, that he has any right or title to the beds of the river or its tributaries inconsistent with, or adverse to, the titles and interest of the defendants. The defendants admit that they raised the frame of a saw-mill across said stream in September or October last, and were preparing to erect a dam for said mill, in such manner as not to divert the

[Shreve v. Voorhees et al.]

water from its natural channel, about thirty-eight or thirty-nine chains from the mill of the complainant, and above his pond and flowage, as they had a legal right to do, when they were restrained by the injunction of this court. They insist that they have a right to the use of the water while flowing over their lands, and expressly deny any intention to divert it from its natural channel, or in such a way as that the complainant's rights or use of the same would be in any way affected, further than by a legal and reasonable use of the waters by these defendants on their own lands. They deny that they have obstructed the stream, or injured the complainant's enjoyment, further than was unavoidable to the common use of the water in the stream; and insist, that if they are permitted to go on and complete their mill, no other injury could arise to the complainant than the reasonable retardation of the waters of said stream, at times, consistent with the common use of the water, and the effect which a rival saw-mill might have on his profits. They deny that the complainant has sustained, or can by the completion of the mill or dam sustain, an irreparable injury; their only object being to enjoy their rights as riparian proprietors in a way not inconsistent with the common rights of the complainant.

The motion to dissolve the injunction in this case, raises an important question. Water rights are daily becoming more valuable in our state, and it is greatly to be desired that every point raised in reference to them, should be settled on just and permanent principles. The natural rights of riparian proprietors are not to be taken away on slight grounds; and the acquired rights of prior occupants, whatever these rights may be, are to be carefully protected.

It is important to ascertain precisely the situation of these contending parties, as presented by the pleading.

The complainant, and those under whom he claims, have been in possession of the mill at Tinton falls sixty years. They were the first occupants, and may be considered as having been the exclusive occupants of the stream above their mill. The fact set out in the answer, that while the complainant's mill was

in possession of Daniel Hendrickson, senior, there was a saw-mill in operation on one of the tributary streams, adverse to the pretended claims of the complainant, is too vague and indefinite to have any weight in the decision of this question. This possession of Daniel Hendrickson, senior, was as early as 1773. How long it continued does not appear, but from the fact that the mills have been in the hands of the present owner for thirty years, and that after being possessed by Daniel Hendrickson, senior, they were owned and possessed by Daniel Hendrickson, junior, and John Holmes, and afterwards by Barnes B. Smock, who sold them to the complainant in 1804. We may safely conclude that the time spoken of, when the saw-mill was on one of the tributary streams, was at least forty years ago. How long it had been there, how long it remained, or what became of it, and whether it was so situated as to interfere in any manner with the flow of the water at complainant's mill, are all matters on which no information has been given to the court.

The complainant, then, has been in possession of the mill, and in the exclusive enjoyment of the stream of water flowing to the mill, without any kind of hindrance or molestation, for a long period of time. So far as his boundaries extend, he has been in possession, and enjoyed the use of the stream, as riparian proprietor. Beyond and above that, he has enjoyed the flow of the water, or so much as was necessary and convenient for the use of his mills, by occupancy and appropriation.

The title that the complainant seeks to establish under the grant or quit-claim from Ashfield, does not appear to the court entitled to much weight. Unaccompanied by possession, it would present rather a doubtful claim as against the shore owners, it purporting to be a grant of the mere bed of the river, made by one who is not alleged to have been in possession at the time, either of the bed of the river, or of the adjacent banks. The extent, too, of the grant is uncertain; for it is not stated how far it extended, nor whether it included the bed of the river at the spot where the defendants seek to place their mills and dam. This latter uncertainty was sought to be remedied by an amend-

ment to the bill; but as the bill, since its amendment, has not been resworn to, the allegation cannot be considered within the case, as now presented.

It does not appear to the court, however, that the complainant's case is materially varied by laying out of view the alleged grant from Ashfield. At the time the defendants commenced their operations, he had been in possession of the flow of the water to his mill sixty years, and this length of possession, as will be presently seen, is equivalent to a grant.

The defendants, on the other hand, are riparian proprietors; they own the property lying above and next adjoining the complainant's, and have owned the one bank for fifty-four years, and the other for forty-one years. They claim to use and enjoy the stream or flow of water, as such proprietors, in common with those owning above and below.

This I take to be the situation of the parties, according to the case made. The difficulty is to apply the law.

The natural rights of riparian owners are well defined. Every proprietor of lands on the banks of a river, has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run, (*currere solebat*) without diminution or alteration. He has no right to use the water to the prejudice of other proprietors above or below him. He may use it while it runs over his land, but cannot unnecessarily detain it, or give it another direction. These are the principles applicable to persons who claim as proprietors simply, standing upon their natural rights: 2 *Black. Com.* 14; 3 *Kent's Com.* 353.

The natural rights of riparian owners may be changed by circumstances. A prior occupancy of the stream, is considered an appropriation of it; and if such an appropriation be made, as if, for instance, a mill or any artificial work be erected on a stream of water not before occupied, the person so making the appropriation, may acquire rights by it, as against the riparian proprietor.

How far those rights, if any there are, may extend; whether simply a prior erection of a mill or occupancy of the stream

by one owner, unaccompanied by length of possession and enjoyment, will prevent the owner above or below him from a similar erection on his own ground, within a reasonable time, though it may interfere with the first occupant, are questions not within the present case, and do not call for the consideration of the court.

When there has been an enjoyment of a stream of water in a particular mode, for a long period of time, without interruption on the part of other proprietors, their natural rights may be seriously impaired, and even entirely lost. The person in possession is considered as having acquired a title, and as having a right to remain undisturbed in his possession as he has held and enjoyed it. In England, the lapse of time necessary to secure this right is twenty years : *Bealey* v. *Shaw*, 6 *East. R.* 208 ; *Balston* v. *Bensted*, 1 *Camp.* 463 ; 2 *Barn. and Ald.* 662 ; 1 *Sim. and Stu.* 190. After a quiet and peaceable enjoyment for twenty years, the court will presume a grant ; not, says lord Mansfield, because in such cases the court really thinks a grant has been made, but they presume the fact for the purpose, and from a principle of quieting the possession. The same principle has been adopted and acted on in this state. " Statutes of limitation," says chief-justice Ewing, in the case of *Campbell* v. *Smiths*, 3 *Halst.* 145, " are not deemed to comprehend in terms and within their purview, the right now under consideration ; but upon the wise principles of such statutes, and in analogy to them, to quiet men's possessions, and to put an end and fix a limit to strife, a rule is established, that after the lapse of the period mentioned in those statutes, a grant will be presumed. The period of twenty years is settled in England, according with the time mentioned in the statute of 21 Jac. 1. Our statute prescribing a like period, our rule is the same." The same rule has been adopted in New-York and in other states ; and it is now held as the general and established doctrine, " that an exclusive enjoyment of water, or of light, or of any other easement in any particular way for twenty years without interruption, becomes an adverse enjoyment sufficient to raise a presumption of title as against a right in any other person, which might have been, but was not,

asserted :" 3 *Kent's Com.* 356.   This I consider to be the law in New-Jersey.

In the case now before the court, the parties do not stand upon their natural rights as riparian owners; nor are they in the situation of owners, one of whom has by accident or forecast got the start of the other in the race of improvements ; but the complainant has had an undisturbed possession of the stream and flow of the water in a particular way, and for a particular purpose, more than twenty, and perhaps full sixty years.   He has, then, a title to the use of the water.   So far as it flows through his own land, he has title by actual grant; and so far as it flows through the lands of the defendants, and is material for the use of his mills, he has title by long and uninterrupted occupancy, which is equivalent to a grant ; and he is entitled to remain undisturbed in his possession : *Saunders* v. *Newman,* 1 *Barn. and Ald.* 258 ; *Van Bergen* v. *Van Bergen,* 3 *John. Chan. R.* 282 ; 3 *Kent's Com.* 359.

It follows, then, as a necessary consequence, that if the erection of the mill and dam at the place contemplated by the defendants, will affect the flowage of the water so as to prevent the complainant from enjoying it in the mode and to the extent he has formerly enjoyed it, and thereby do him an injury, it will be a direct infringement of vested rights, and the court is bound to afford protection.

It is not to be understood that a trivial or unimportant interference—such an one as does not sensibly and plainly interrupt the complainant's enjoyment, will call for or warrant the restraining power of the court.   So strict a construction of the rule might greatly embarrass and impede the progress of improvement on many of our streams, and would be contrary to the practice of the court.   It is common to restrain a defendant from building so near the plaintiff's house as to darken his windows, if they be ancient lights, but it is not universal.   In 1 *Dick.* 164, *Fishmongers' Co.* v. *the East India Co.*, the court said, it was not every diminution in the value of the premises, nor every species of mischief, upon which an action on the case might be main-

tained, that would be sufficient ground to interpose by injunction. The foundation of the jurisdiction, is that sort of material injury to the comfort of the existence of those who dwell in the neighboring house, which requires upon equitable principles the application of a power to prevent, as well as remedy, the evil. The doctrine contended for by the complainant, that having established a right by prior occupancy, he is to be protected against all possible interference, is as unsound as the one sought to be established by the defendants, that they are entitled to all the natural rights of riparian owners. The truth is between them. The one has acquired a right to the ordinary and constant flow of the water, or so much as is required for the usual puposes of his mill. The others have lost the natural right of using the water in common—their enjoyment must be subject to that of the complainant.

It was well remarked at the bar, that if the defendants' rights were restricted, those of the complainant were not without limit. This is undoubtedly true. He cannot, under pretence of prior occupancy, though accompanied by the presumption of a grant, cover the whole extent of the stream and its tributaries, and insist that because no dam or obstruction has existed heretofore, therefore there shall be none in time to come. As against a riparian owner, seeking to erect an improvement on his own land, he ought to show that his superior rights have been or will be; not probably, but really and sensibly affected; in other words, he ought to show that such erection would so obstruct the natural flow and impetus of the water as to do him an injury.

How stands the matter upon the facts disclosed? The complainant says the defendants have commenced digging and damming the water, about six hundred yards above his mill, and have already obstructed the stream and diverted it from its natural course by sinking in timber and other materials, and thus infringed his right and damaged and greatly endangered the safety and enjoyment of the said property. It would have been satisfactory to the court, in a case of this kind, if the complainant had given information of the nature of the stream, its cur-

rent and fall. It does not follow in all cases, that a dam erected six hundred yards above another one on the same stream, although the natural current of the water is obstructed at that particular place, will materially affect the enjoyment of the stream at the mill below; and it is very important that, in a matter of this description, the court should act with circumspection, and upon certain information.

The defendants deny any damage further than was unavoidable to the common use of the water. If, then, any damage or interruption, however small it might be, would call for the restraining power of this court, the complainant's case is made out. But it has already been stated, that the plaintiff should show a sensible injury—one that is obvious and plain—to warrant a proceeding that shall take away all right from the defendants. I cannot feel satisfied that this has been done in this case; and so far as the continuance of the injunction rests on the ground of damages already done, I should be inclined to say the ground as exhibited is insufficient.

But the complainant alleges that the defendants are going on further to obstruct the water; that by damming up and obstructing the stream, and withholding it and then letting it out at unreasonable times and in undue quantities, his property will be greatly impaired, if not ruined entirely. The apprehension of an unreasonable and improper use of the stream, furnishes in itself no ground for an injunction. It must be supported by facts to show that there is sufficient cause for a reasonable belief that such will be the case. And although the charge of the complainant is, that the defendants must *necessarily* do it to keep their mill in operation, according to the nature and usual course of milling business, I feel unwilling to rest upon so general an allegation.

Still, the complainant is entitled to full protection against injurious and improper interference. The claim of the defendants to all the rights of riparian owners, cannot be sanctioned, except so far as their exercise may comport with the free use of the stream as formerly enjoyed by the complainant. That such ex-

ercise has heretofore, or will hereafter, do a material injury to the complainant, I am not so well assured of, as to feel justified in saying that the defendants shall wholly desist and be entirely deprived of the right of using the water on their own land for milling purposes.

I cannot, therefore, sustain the injunction as it now stands. It is too broad. Nor do I feel at liberty to dissolve it. This would leave the complainant too much in the hands of the defendants. I see no difficulty, however, in so modifying the injunction, as to protect and secure the rights of both parties. If the complainant is secured in the enjoyment of the use of the stream as he has heretofore had it, without any sensible and material alteration, so as to occasion an actual injury, it is all he can require or is entitled to. To that extent the court deems it right to go, and no further. If the defendants, after a full knowledge of their situation and rights, shall clearly entrench upon the privileges of the complainant, the power of the court is sufficient to give him ample protection and relief.

If the complainant should be fearful that the injunction so modified will be too indefinite and uncertain, and that nothing short of an absolute restraint upon the defendants will secure him ; and believes that he can present the case with more particularity and precision, so as entirely to satisfy the mind of the court, he will be at liberty so to present it at any time.

Let the injunction be modified so as to conform with the principles adopted by the court, and that without costs.